The next case is number 2012, KD1 DEVELOPMENT v. GSA. Okay, Mr. Lasota, am I pronouncing that correctly? Lasota, sir. Lasota, okay. May it please the Court, Douglas Lasota on behalf of Appellant KD1 and its President Kevin Doody. Our appeal today is from the Board's findings and conclusions as it relates to the dispute over a lease between the government and KD1. A little bit of background, the project at issue was a design-build project for an unknown term. The original proposal was subject to multiple requests for resubmittals. It was very undefined intentionally by the government as they attempted to get the best deal they could. Mr. Doody is not a large contractor. He is a small one-man shop. This project is in the northern Appalachia. He is not an experienced government contractor such that he has spent a lot of time submitting request proposals and is familiar with the… In the red brief, the government says, about halfway down, KD1 does not even mention the second sentence of paragraph 1.10a, which informed officers, the offerors, that the gross price shall include the base price. Why didn't you mention it? I mean, it seems to me it's relevant to this. I'm sorry. The gross price… That's the problem. The solicitation form does not even list, submit your gross price and also submit your base price, which would allow apples to apples. And that's where the confusion comes in and the ambiguity. But they say, how could the price be total or gross if it did not include operating expenses? That's the preliminary sentence to that. That's correct. He never submitted anything that said, this is my gross price. What he did, what they asked for is to submit your operating costs on a form. And he did not do that initially. And they came back to him after the first proposal and said, your operating costs are way too low. There's no way you can do that. Take a look at this form. Fill it back out and submit it. And they accepted it on the second go-around. They then looked at the building and said, the building is too skinny. We want different finishes. All this time, during the history of this negotiation. I'm confused. Hold on a second. My understanding is that some aspects of the solicitation were incorporated into the contract. But what we've got to deal with first is the actual contract language. If we determine that the contract language is ambiguous, then we can look to extrinsic evidence such as the solicitation, the negotiations, the conduct of the parties during performance. The first question is whether this language, which appears on page six of the board's opinion, is ambiguous. And particularly paragraph 3, 6, 11, 13, right? Which page are you on, sir? This is pages 5 and 6 of the board's opinion. Yes. It's pages 288 and 289, the writer's release. You have to go back to the actual lease itself, the first page of the lease. Yeah. The first page of the lease is on page 286. If I could just say something, it may help me in the argument. Okay. The government takes the position that this contract is not ambiguous. It's very clear what it means. And it means that the rattle cost has to include the operating cost. Correct. They also say, well, if there's any ambiguity, it's patent. You should have discovered it. And the total reliance is on 1.10a that Judge Wallach is pointing to. That was in the solicitation. Okay? Yes. Now, the first thing, we're trying to interpret the contract. We want to care what's in the contract. If you look at pages, page 287 of the record, you will see that only a part of the solicitation was included in the contract. I'm saying this to the government, too, because I want to tell you the same thing, and you know it. Right? 1.10a is not included in the contract. It's excluded. It's extrinsic evidence. It's irrelevant for the question of whether or not the contract is or is not ambiguous. It only comes into play if there is ambiguity in the contract. And the government should have known better. They do know better. If you look clearly at page 287, it tells you the only pages of the solicitation that are included are 26 of them, and they start at 3.0. That's on page 291. So to help you out, the government's argument as to why this contract is unambiguous, or if so, why it is patent, is frivolous. So you have a nice leg to stand on to say this contract is ambiguous, because when you look at pages 288 and 289, where in those pages or where in page 286 are you told that the 1747 has to include the 397? That doesn't say so. Correct. All right. So if the contract is ambiguous. Yes.  Correct. To decide what the true meaning is. And your strongest argument is the government for eight years paid you, not only the 1747, but they paid you the 397 adjusted, right? Correct. And you're saying that course of conduct is sufficient to show that the real intent of the parties was, as you say, right? There's no contradictory evidence to that. Well, the contradictory evidence to that is 1.10a. Where in the solicitation you were told, give me a grossed up number that has embedded in it costs. Right. A. B. Afterwards, after the contractor and the process of the contract being finalized, we have your testimony from your guy, which I understand what was going on, and it was confusing, and they refused to change the form, et cetera, et cetera. We also have testimony from the very contracting officer and the specialist. We thought that the number was inclusive. We thought the 1747 included the 397 because that's the amount of money we went for funding for. Correct. How else would the agency have been able to get the money to pay for the lease if the lease was costing more than they thought it was? So we have on the record, we have pieces of evidence that go both ways. Correct. As to intent. And the question is, which prevails? That's correct. You didn't know about the funding, did you? I asked those questions, I believe, at the time. No, no, no, no, no. Not you, the client. No. You didn't know about the funding. He does testify that any time he's dealing with the tenant, which is M-Shop, and if they would ask for something, they'd always say, well, a new fence or something for the property. I have to go back and see if there's funding for it next year. So he knew after entering the contract that there were funding, how the system worked, but not contemporaneously signing the agreement. No, but just to me, the case comes down to the fact, as I say, I think I've reamed the government enough for Ed's position, but to say, you've got an ambiguity in this contract, in my mind, and then you take all the data points lying around to ask yourself, you know, can I resolve the ambiguity? Now, if you say, you know, I'm not certain I can resolve the ambiguity, here's a fun one that didn't get briefed. You say, well, I think the evidence is an equipoise. I think the evidence is so strong by the government having paid this money for eight years, I can't say for sure that the extrinsic evidence tells me exactly what the answer is, and therefore I have to decide, was the ambiguity latent or was it patent? Because if the ambiguity was latent, you win. And if the ambiguity was patent, no, you lose. So you have to first convince me that you're still in the game once we take all of the evidence concerning different people's point of view into play. In your brief, we didn't get a reply brief from you, so we didn't get a chance to see what you said about what the government was talking about, this funding I'm talking about. But you're probably the single strongest piece of information that's adverse to you is what Judge Wallop started with, which is 1.10a. And 1.10a was in the solicitation. And 1.10a says, it's on page 185 of the record. It says, a break out of a base price of rentables and utilities. The gross price shall include the base price. You were supposed to submit with your offer a total gross annual price per rentable square foot, right? That's correct. And he didn't. And the reason he didn't was because the form that he had to submit that was their form doesn't ask for a gross price and a base price. It asks for square footage. And then he gave them another form for operating costs. And so they're negotiating off of two forms. They reach agreement on the operating costs and continue three or four more rounds of proposals on the square footage and the term. Can I ask you a question? Yes, sir. We've got the record there in front of you. Look at pages 282 to 283. If you look at 282 and 283, this is evidence that the government's using against you as part of their argument of contemporaneous documents that show that the total number of the 1747 was thrown into 1397. Who did the redacting? If you look up under evaluation on page 283, the heaven duty is something and the base cost of operating services is something. So it looks like there were separate numbers submitted. Yes. That was the subject of the motion to compel, and the board ruled that that would give him a competitive advantage to know that information.  Ten years after the lease expired. The government did the redacting on you? Yes. Now, and so you don't know what that information was. And also the line here above heaven duty that blocked out. Those are the other, there were other offers. Oh, other offers, OK. And they didn't allow us to have that either. OK. OK, do you want to save the rest of your time for rebuttal? Oh, I'm sorry. Are you? Let me please address my other two. The statute of limitations argument that they never issued a final decision, even as we stand here today, that contains the mandatory language. Do you need any explanation on that? They never issued, all they do is issue collection letters. Yeah, he knew they took his rent, but they didn't give him the language that's mandatory under CFR 33.211A4. They shall issue a written decision that shall include paragraphs substantially as follows, and then it tells you your appeal rights. So, technically, their claim against us is not right for adjudication. It never issued it, and they're out of luck because they stopped payment in 2006, and it's now 2012, six-year statute. Then a ratification argument is that every year a contracting officer would do a lease digest action, pull the file, recalculate the operating costs. What's a different contracting officer? They change throughout. Oh, I know. The contracting officer whose intent would be of interest if we're trying to decide on the contract, that person's audios. Yeah, they weren't available or they didn't have knowledge. I don't know, but Mr. Doody did know, and he's the only one who knows. Well, it's to your disadvantage. I mean, it's eight years in. They did these lease digest actions. They testified they would pull the lease to make sure everything matched up as they made the changes. They had a lease action team that pulled these leases in 2005 and confirmed it. They had an occupancy agreement with MSHA. They had to pull the lease and confirm to MSHA so they could get funding in 2005. So they had at least seven or eight opportunities to review the lease and ratify the terms even to the extent that they proved that they weren't entitled to make those payments. I'll save the rest for later. Thank you. Thank you. Mr. O'Connell? The language of the lease itself is ambiguous, right? We don't think so, Your Honor. You take 1.10 out of the equation, right? Tell me why it's not ambiguous if you take away your only argument in favor of ambiguity. No ambiguity. The lease provides in paragraph 6 that the provisions of the solicitation are to be provided without modification. Where? Page 287. 287? Yes. Okay. The following are attached and made a part hereof, correct? True. And 7. And we've got a severability clause. That's at, right? 382, paragraph 8. Unless included in the contract, everything is null. Right. You're aware of the severability provision? Yes. The paragraph 6B above paragraph 7 says that the provisions of the solicitation are to be provided without modification. That doesn't say they're incorporated. But it says that they're to be provided, and that would presumably mean that they're supposed to perform. Then that's inconsistent. Why did they only put in, on B, why did they only put in 26 pages? Because those provisions are more germane to the building that's actually going to be constructed. The pricing was gotten out of the way once the offers were accepted, but 6B says that they're still supposed to provide the terms of the solicitation. And that would include 1.10. Doesn't the severability clause take you out? Page 322, paragraph 8. This lays on the entire agreement. No prior written agreement. The part of the agreement includes providing all terms of the solicitation. Okay. Well, let's assume we reject that and we conclude that the only parts of the solicitation that were specifically incorporated are counted here. If you look at paragraph 13, it says, the same shall be measured and rental shall be paid in accordance with paragraph 3.7 of the solicitation. Well, if you look at 3.7, that deals with the occupiable space. The provision having to do with the operating cost base is 3.6. So the specific language of the lease is describing the 1747 as payment for occupiable space under 3.7, which suggests to me that the operating cost base is something separate. No? No. Why not? No. We're supposed to pay 1747 for the operating costs. I'm sorry, 1747 for the occupiable square feet, which is supposed to be 9,100 square feet. Okay, but that's in the solicitation. The part of the solicitation that's attached here, that's a separate item from operating cost base, correct? Well, the occupiable square feet is 3.7 and operating cost base is 3.6. If this says in accordance with 3.6 and 3.7, you'd have a pretty good argument, but it doesn't say that. It says the 1747 is for 3.7. Right, but it says elsewhere that the 1747 includes the operating cost, which is 397. Where does it say that? It says that in 1.10a. We just took that off the plate. Assume for purposes of argument that 1.10a is only pertinent to help resolve the question of whether or not, which way you read the ambiguous contract. Well, then we win because then there would be a patent ambiguity. Read your brief. Why did your brief say there was a patent ambiguity? Well, because if you... Are you telling me that you can take something that's not in the contract, okay, although you can't use it to decide whether there's an ambiguity, you can use it to decide whether it's patent or latent? That doesn't pass the probability test. I was assuming for the purposes of your question that you were not going to include it as part of the lease, Assume it's not in the lease. Assume it's not in the lease. Forget about patent versus latent for a moment and just focus on the language here. The language says specifically that they're paying the 1747 for the occupiable space in 3.7, which seems on its face to exclude the operating cost, which is in 3.6. No? No, because 3.7 doesn't tell you what's in the 1747. If you have to figure out what's in the 1747, you have to look at a different paragraph of the solicitation. I don't understand what you're saying. I mean, is it not true that paragraph 13 describes the 1747 as payment for the 3.7 occupiable space, correct? It's telling you that it's paying 1747 for the amount of square feet that is measured after the building is actually built. So they pay 1747 for whatever amount of square feet. It refers to 3.7, right? The 1747 is for what's incorporated within 3.7. 3.7 and paragraph, I think it's 22 of the clauses. And that just tells you how they're going to measure it and then what they're going to do if there's a variation. But it doesn't make any reference to 3.6, which is the operating cost. Right. So, I mean, sort of the language of the contract itself hurts you. It may not be conclusive, but it hurts you, doesn't it? We don't think so because we think that you have to go elsewhere to determine what's in the 1747. Yeah, but what helps you in the contract? You resisted, but you're not getting away with it. We're taking 1.108 out of these clauses here relevant. So all we're looking at is the contract that starts at page 286 and tells you that it incorporates 26 pages of the solicitation. We're looking at what in the solicitation helps you. We think that paragraph 6B where it says that they're supposed to provide the provisions of the solicitation. 6B. We're rejecting that. You're not getting it. You're like me, you've got a hearing problem. That's rejected. So we'll take, assume for the purposes of argument that 1.108 is out, out, out, and out. Oh, now your brief is built entirely around 1.108. So I really can't let you get away with anything outside that brief, can I? Fair is fair. That's true, but you... So why don't you tell us? Why don't you come to it and tell us that if the contract is ambiguous, right, then why is it that the course of dealing doesn't overwhelm, or why does the course of dealing, let you tell me why the course of dealing overwhelms, doesn't overwhelm the other evidence? Well, the statement section that was cited in the brief I think deals with the course of dealing argument rather well. It says that sometimes course of dealing is meaningful and sometimes what people do just means that there's a mistake and the board made a factual finding that there was a mistake here and given the standard of review... Where did the board say that exactly? The board said, well, the board... Help me, I mean, you've got the opinion. When you tell me the board said something, you've got to tell me where they said that was made a mistake. Paragraph 789 of the board's opinion. 789. I know that the person testifying about a mistake, I didn't see as a word mistake and do I have to do a full search? No, they don't say a mistake. Why do you say that? What the board holds is that GSA intended to pay 1747 a square foot as the total rent. The board held that GSA paid something different and the board held that they did so not intending to actually pay something different than the lease or... But their own internal analysis says that this is the right way to compute it, right? I mean, it's not as though somebody in using a word processor to enter the number on the check hit the wrong key. They did an analysis of the contract and they said this is what you owe. There's no testimony or factual findings of the board that would support that statement, Your Honor. But there are documents in the record showing your own analysis of the thing. And the board held based on testimony that those documents were not issued with an intent to change the lease or do something different? No, no, but they weren't done with intent to change it. The claim is a little more subtle. And don't fight us. We're going to try to get the right answer here. So if we assume that the contract is ambiguous, now we see the data points are out, tip this way and tip that way. And what the presiding judge was asked, doesn't the record show that there was an analysis? Not the purpose of the analysis, there was an analysis. No, what it shows is that every year they issued these lease digest actions and the testimony of the contracting officers was unanimous that all they were looking at that was the change to the operating cost, what the change to the 397 was going to be. There was no analysis, unfortunately, until 2005 when they discovered the mistake. I think you're right about that testimony. We were basically looking to see whether we adjusted the 397 correctly. Right, that's what they testified, yes. Where's the restatement provision? Is that set forth in your brief? Set forth in KD13, I think it's 202. What page? Restatement section 202. No, what page of the brief? I think it's cited in KD13, if you want to have a look at the... Thanks. 28. It doesn't set forth the text. It doesn't, I can read it to you. Any course of performance accepted or acquiesced in without objection. Accepted or acquiesced in. You say that the restatement allows, says a mistake doesn't count, where does it say that? What says course of performance, the parties to an agreement know best what they meant and their action under it is often the strongest evidence of their meaning, but such practical construction is not conclusive of meaning. Conduct must be weighed in the light of the terms of the agreement and their possible meanings. Where it is unreasonable to interpret the contract in accordance with the course of performance, the conduct of the parties may be evidence of an agreed modification or of a waiver by one party. There's a cite to the UCC, but then it says, or there may simply be a mistake, which should be corrected. Okay. Moving on, I'd just like to take the last couple of minutes. Let me ask you this question. What are we to do if we decide that we look at all these data points and we give some credence to the contracting officer's testimony that, you know, he tried, he wanted to find some way to put things on the form the way he wanted to, but the contracting officer said you've got to use our forms. We write up the whole story and as soon as we come to the conclusion, we say, gee whiz, we're not comfortable resolving the ambiguity question on the basis of the extrinsic evidence. Therefore, we think that there's a remaining ambiguity and the question is was it latent or was it patent? Well, the problem with your question, Your Honor, respectfully. And in the question, I've already taken into account 1.108 and I've given it all the weight I can possibly give it to the eight years of paying and having that pay not be objected to. Okay. Can I suggest a way I think the court should look at it? First of all, one fact mentioned in the question is incorrect, Your Honor, respectfully, which is that the board found, and this is backed up by the testimony section cited, that KD1 never actually talked to the contracting officer about the price provisions, never asked the contracting officer for interpretation or clarification of the provisions. But what the court should do is what the court has done in other cases and put yourself in the position of a reasonably prudent offeror here. And the reasonably prudent offeror would look at 1.108 and either conclude that the operating costs are included. No, no, no, no. That's not in the contract. He doesn't have to worry about things that aren't in the contract, does he? When you're determining patent or latent ambiguity, that's based on the language of the contract. But for the pricing, there's no other way that the court could do it without at least considering 1.108 in determining how the reasonably prudent offeror should look at it. The way I've structured the hypothetical, which you don't like, seems to be one that the court has to consider once we weigh ourselves. You got yourself in this trouble yourself by putting all that emphasis on 1.108 for the ambiguity and the latent patent issue. So if we decide, gee whiz, we've tried as best we could to interpret the contract based on the extrinsic evidence, and we call it a tie. Now, you're going to tell us we're wrong, but let's assume it's a tie. Then we're back to looking at the contract again, I think, to ask whether the, as the presiding judge said, to ask whether or not the ambiguity is latent or patent. Look at the contract, but... I'm just saying, help me out, because I want to make certain that the rules of engagement are being faithfully followed in contract interpretation. We tried the best we could once we saw an ambiguity. We didn't say what kind it was to see if we couldn't straighten it out, couldn't get the job done. Went back to the drawing boards and said, is it latent or is it patent? Just looking at the contract. Right. And... Why is the ambiguity patent if what we have to work with is pages 286, 287, 288, 289? Again, we think that the lease required the offroaders to perform all terms of the solicitation, so that would include the terms of 1.10A. Okay. Thank you, Mr. O'Connell. I think we're out of time. Thank you. Mr. Lozada, you have a little over two minutes. Thank you, Your Honor. With regard to the issue of was it an ambiguous contract, I would direct the Board's attention to page 395, which was the GSA's effort to clarify the lease, sending a supplemental lease agreement. What page was that, sir? 395. Thank you. This SLA clarifies the square footage in parking spaces with this lease and the annual rent. And this was unilaterally submitted. Nobody called and said, hey, we're confused on what we're paying for rent out there. That was the first notice of this issue. The new lease that they re-upped with Mr. Doody in 2008 for an additional 10 years is based off of that supplemental lease agreement. It's broken out very clearly. This is operating costs and this is base rent, and that's evidence of the ambiguity. Thank you. Great. Thank you. The case is submitted. We thank both counsels. Thank you. Our next case is number 2012. Can I just say one thing? I say as a government counsel, I'm sorry if I was a little bit hard on you, but, I mean, as you can tell, the court spends a lot of time preparing for these cases. And if you honestly believe in your argument that 1.10 was embedded in the contract, you should have said that in your brief. Because it's a little late when you come here and you give it to me. You all know how to read these things the same way we do. And both sides are entitled to a very full and fair hearing, and I apologize if I tone a voice or I overstep my bounds. I'm just trying to do my job.